UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:25-cr-260 ZMB SPM |
| | ) | |
| ALBERT JAMES, | ) | |
| | ) | |
| Defendant. | ) | |

## **GOVERNMENT'S POST HEARING BRIEFING**

COMES NOW, the United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Dianna R. Edwards, Assistant United States Attorney for said District, and states as follows:

**Introduction:**

During the suppression hearing, the government produced a video of the entire traffic stop and canine search.  Two different video angles of the encounter with audio and transcripts were provided to the court.  At the suppression hearing, Officer English and Officer Clement's testimony and police video evidence revealed that Officer English possessed probable cause for the stop, and Officer English objectively developed reasonable suspicion to justify the approximately 43 seconds between when Officer English ended the traffic stop and the drug dog alerted to narcotics giving rise for probable cause to search defendant's rented suv.

**Probable Cause for the Initial Traffic Stop:**

"When the police observe the driver of a vehicle commit a traffic violation, even a minor one, probable cause exists to stop the vehicle." United States v. Mendoza, 677 F.3d 822, 827 (8th Cir. 2012) (citing United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011)). See also United States v. Coleman, 603 F.3d 496, 499 (8th Cir. 2010) ("[A]ny traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver.").

Officer English observed defendant traveling too closely in violation of Oklahoma State Law (Title 47 11-310).  Because of this violation, probable cause is established for the traffic stop. Defendant argues that Officer English's creditability should be an issue in assessing whether defendant was in fact traveling too closely.  However, dash cam video submitted to the court at the evidentiary hearing corroborates Officer English's testimony.   The proximity between the defendant's white rental suv and the preceding vehicle is witnessed at 10:29am on Officer English's dash camera.



Even if, the dash cam video is somehow deceiving or Officer English's visual perception at the time was unclear, "[T]he Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Heien v. N. Carolina, 4 Case 2:15-cr-01016-CJW-MAR Document 23 Filed 08/04/15 Page 4 of 9 135 S. Ct. 530, 536 (2014) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). "The objective standard governing an officer's decision to stop a motorist protects officers who have a mistaken belief that a traffic law is being broken." United States v. $45,000.00 in U.S.

Currency, 749 F.3d 709, 715 (8th Cir. 2014) (citing United States v. Sanders, 196 F.3d 910, 913 (8th Cir. 1999)). Here, based on the dash camera video of the traffic violation and Officer English's training, it was objectively reasonable for Officer English to believe the defendant's rental suv was following the preceding vehicle too closely. As such, probable cause existed to initiate the traffic stop.

**Reasonable Suspicion Existed After the Traffic Stop Concluded:**

Defendant argues that even if the initial traffic stop of the defendant's rented vehicle was constitutionally permissible, the stop was impermissibly prolonged. In support of this contention, Defendant argues that law enforcement officers lacked reasonable, articulable suspicion to extend the stop beyond the point when Officer English completed the purpose of the initial traffic stop.

An officer may conduct an investigation reasonably related to the scope of a lawful stop. United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). "Once this initial investigation is finished, however, the purpose of the traffic stop is complete and further detention of the driver or vehicle would be unreasonable, 'unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention[.]'" Id. at 925; see, United States v. Anguiano, 795 F.3d 873, 876 (8th Cir. 2015). Without other reasonable and articulable suspicion, police may not extend an otherwise-completed traffic stop. See, Rodriguez v. United States, 575 U.S. 348 (2015).

Here, the question is whether officers had a further reasonable, articulable suspicion to extend the stop beyond the point when Officer English completed the necessary actions within the scope of the initial traffic stop. If Officer English lacked reasonable, articulable suspicion to expand the scope of the investigation, then the extension of the stop would be unreasonable. See, Id. at 353–57 (holding that, absent reasonable suspicion, seven- or eight-minute extension of traffic stop in order to conduct drug sniff violated Fourth Amendment). However, if Officer English had reasonable, articulable suspicion to justify expanding the scope of the investigation then the

extension of the stop would not violate the Fourth Amendment. See, e.g., United States v. Maltais, 403 F.3d 550, 556–58 (8th Cir. 2005); United States v. White, 42 F.3d 457, 460 (8th Cir. 1994). "A reasonable suspicion is 'some minimal, objective justification' for suspicion beyond an 'inchoate hunch.'" United States v. Davis, 943 F.3d 1129, 1132 (8th Cir. 2019) (quoting United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004)).

To establish reasonable suspicion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" further investigation. Terry v. Ohio, 392 U.S. 1, 21 (1968). The concept of reasonable suspicion is "not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). Instead, when determining whether reasonable suspicion exists, Court must consider the totality of the circumstances. United States v. Woods, 747 F.3d 552, 556 (8th Cir. 2014).

Here, as testified by Officer English and corroborated by police video, defendant sat in the passenger seat of the police vehicle for approximately ten minutes while Officer English conducted the business of the traffic stop. Officer English testified that it can be expected for members of the public to exhibit sign of nervousness when interacting with the police, but defendant exhibited extreme signs during their interaction.  The defendant exhibited these signs of extreme nervousness through his physical actions and verbal responses. The signs included touching his face/rubbing his temples/fidgeting in response to certain questions, pregnant pauses in the middle of conversation, attempting to anticipate the officer's questions, shifting conversation to Officer English in response to questioning, and filling silence with random talk.  Additionally, Officer English testified that the defendant's one way flight to Phoenix, a known drug import and transshipment hub for illicit drugs, coupled with essentially a one-way car rental to Saint Louis created suspicion that illegal activity may be afoot.  Adding to Officer English's suspicions, was the size of the suv rented by the defendant who was traveling solo.  Additionally, the defendant's

explanation for being in Phoenix was inconsistent and illogical and the defendant's statements regarding his planned route back to Saint Louis shifted and was inconsistent.

With reasonable suspicion in hand, Officer English ended the business of the traffic stop with defendant 11 minutes and 56 seconds after deploying his emergency siren to pull over the vehicle. Immediately following the end of the traffic stop, Officer English spent approximately 35 seconds attempting to receive defendant's consent to search his vehicle by asking: 1) if there was anything illegal in the vehicle; 2) if everything in the vehicle belonged to the defendant; and 3) if defendant would give consent to search the vehicle. During the approximate 35 seconds while Officer English was attempting to obtain defendant's consent, Officer Clement arrived on the scene ready to deploy his drug-sniffing dog ("Trick").

After the defendant refused to provide consent, Officer English informed defendant that a dog was on scene to conduct an open-air sniff of the vehicle. At this time, the defendant requested Officer English look for the defendant's cell phone in the defendant's rental suv. Officer English asked defendant if he wanted Officer English to look for the cell phone before or after the dog sniff. The defendant stated that he wanted his cell phone first. Approximately 1 min and 45 seconds elapsed as Office English attempted to locate defendant's cell phone in the rental vehicle. After Officer English informed defendant that his cell phone was not observed within plain sight, Officer Clement immediately deployed Trick. Trick alerted within 8 seconds of approaching defendant's rental car and gave her final indication within 18 seconds of being deployed.

Thus, the question is whether Officer English had reasonable suspicion to detain the defendant for approximately 43 seconds (adding the 35 seconds of Office English attempting to receive defendant's consent and the approximate 8 seconds before Trick alerted). According to the unrebutted testimony and video evidence presented during the suppression hearing, Officer English possessed a reasonable suspicion that criminal activity justified the continued brief detention. The totality of the circumstances of this case demonstrated that Officer English had "a

particularized and objective basis for suspecting legal wrongdoing.'" United States v. Corrales-Portollo, 779 F.3d 823, 829 (8th Cir. 2015). As Officer English's suspicions were based upon routine tasks related to the traffic violation, such as asking for license and registration and inquiring about the defendant's destination, route, and purpose, he appropriately expanded the scope of the encounter to address the suspicions created by the inconsistent responses and the driver's behavior. United States v. Chartier, 772 F.3d 539, 543 (8th Cir. 2014).

The facts of this case are easily distinguishable from those in Rodriguez or defendant's presented case United States v. Davis, 2022 WL 1410717.  In Davis, there was a one hour and ten-minute delay between ending of the traffic stop and the police dog arriving on scene.  Here, Officer Clement was already on scene with Trick and ready to walk around defendant's vehicle at the time the defendant refused consent.  The holding in Rodriguez is not implicated and there is no constitutional violation.

**The Dog Alert Provided Probable Cause to Search the Vehicle:**

Officer Clement testified that he was a certified dog handler and Trick was certified as well. Officer Clement testified that he worked with Trick for years, trained Trick for years, lives with Trick, and had never known her to provide a false alert. In response to persistent questioning regarding Trick's accuracy, Officer Clement testified that Trick is the best police dog in the state of Oklahoma.  Officer Clement walked the court through Trick's behaviors on scene and testified that Trick undoubtedly alerted to the scent of narcotics and gave her final indication at the location closest to the narcotics scent.  It was at this pinpointed location that officers later located over 50 pounds of methamphetamine.

The defendant introduced Trick's training records which further corroborated Officer Clement's testimony establishing Trick's reliability in detecting drugs and continued training. However, to establish Trick as a reliable drug dog, the government need not present an exhaustive set of records or field performance logs. Florida v. Harris, 568 U.S. 237 (2013).  Evidence of Trick's

satisfactory performance in certification or training can provide sufficient reason to trust her alert. Id. Additionally, the Eighth Circuit has held that the Fourth Amendment does not require drug dogs to abide by specific and consistent code in signaling their sniffing of drugs to their handlers. See United States v. Holleman, 743 F.3d 1152 (2014). Meaning, as long as Officer Clement can articulate specific, reasonable examples of the dog's behavior that signaled the presence of illegal narcotics, the court should not engage in an evaluation of whether Trick should have signaled in a different fashion. Id. Here, Officer Clement testified as to his familiarity with Trick and his certainty that she alerted to the detection of the scent of narcotics within approximately 8 seconds of being deployed and gave a final indication within approximately 18 seconds of being deployed.

**Conclusion:**

For the foregoing reasons and the legal authority presented in the government's original response to defendant's motion to suppress, the government continues to respectfully request that defendant's motions to suppress the physical evidence and his statements be denied.

Respectfully submitted,

THOMAS C. ALBUS
United States Attorney

/s/ Dianna R. Edwards
DIANNA R. EDWARDS, 59641MO
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Dianna R. Edwards
DIANNA R. EDWARDS 59641MO
Assistant United States Attorney